IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

TERENCE SANDY MCCRAY,

             Petitioner,

vs.

MICHAEL CAPRA, Superintendent, Sing
Sing Correctional Facility,

             Respondent.

No. 9:15-cv-01129-JKS

MEMORANDUM DECISION
and ORDER
[Re: Appointment of Counsel]

Terrence Sandy McCray, a New York state prisoner proceeding *pro se*, filed a Petition

for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. McCray is in the

custody of the New York State Department of Corrections and Community Supervision and

incarcerated at Sing Sing Correctional Facility. Respondent has answered the Petition, and

McCray has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On June 3, 2009, McCray was charged with rape in the first degree in an indictment alleging

that he had engaged in sexual intercourse with the victim by forcible compulsion. On direct appeal

of his conviction, the Appellate Division of the New York Supreme Court recounted the following

facts underlying the charges against McCray and the evidence presented at trial:

> Many details are undisputed. [McCray], then 40 years old, first met the victim—an
> 18–year–old woman with an extensive history of psychiatric problems—at a bus stop in the
> City of Albany in April 2009. They talked extensively about various topics, including sex,
> while walking together until they eventually visited a recreational vehicle that belonged to
> a friend of [McCray]. The victim testified that, while inside the vehicle, [McCray] gave the
> victim a back massage, but nothing else happened of an intimate nature. [McCray's] version
> of these events differed only in that he testified that, following the massage, the victim
> engaged in oral sex with him. Upon parting that night, the victim gave [McCray] her
> telephone number and they spoke on the telephone a few times in the weeks ahead. On May

26, 2009, [McCray] called the victim and invited her out for the evening. The victim's mother drove her to [McCray's] residence, where the victim met members of [McCray's] family, and she then dropped the pair off on Lark Street. They walked around for a while and stopped at the home of [McCray's] friend, Marvin Calhoun, where they visited with Calhoun and his family. The victim admits that she exchanged sexual innuendos with [McCray] during this visit. After a few hours, the couple left, ending up at the apartment of another one of [McCray's] friends, Kevin Johnson, where they engaged in consensual kissing and fondling.

It is at this point that the testimony of [McCray] and the victim sharply diverges. The victim testified that after about 15 minutes, [McCray] wanted to have intercourse but she refused, telling him it was too soon in their relationship. When [McCray] continued to insist, she became angry with him and left the apartment. [McCray] caught up with her on a street outside the apartment and apologized to her. She stated that they continued to argue while they walked, but that she tired of walking so they sat down. The victim stated that, while seated, they witnessed police officers draw their weapons on a young female with a baseball bat. She explained that this incident made both her and [McCray] laugh, and she no longer felt angry with him.

[McCray] testified that the victim had unsuccessfully asked Calhoun if they could use a bedroom to have sex while visiting Calhoun's family and, once at Johnson's apartment, she initiated sex and it was he who refused to have intercourse there because he thought it was not appropriate to have sex on the couch with his friend in the next room. He testified that they left the apartment together in search of another place to have sex, and that the victim was willing even to have sex outside in the bushes. [McCray] further stated that the victim was not angry with him when they left Johnson's apartment and that they never witnessed the police encounter with the female with the baseball bat.

By both accounts, the couple eventually ended up at an abandoned house located at 595 Clinton Avenue in Albany, where the victim followed [McCray] through the backyard into the house. At this point, the accounts of the victim and [McCray] again diverge. The victim testified that [McCray] backed her up against a wall and started to forcibly kiss and grind against her. She testified that she pushed him away and told him to stop, but that he continued, telling her, "You are going to give it to me or I'm going to take it." The victim stated that they struggled; she punched [McCray] in the face, near his jaw or chin, and [McCray] hit her in the face several times and choked her. While he was choking her from behind, the victim testified, she was able to bite his forearm. After an extended struggle, during which the victim tried to make noise to draw attention and begged for her life, she gave up and submitted to sexual intercourse with [McCray]. The victim stated that, when it was over, [McCray] did not prevent her from leaving, but told her, "Don't go out there looking like that." The victim stated that she wiped the tears and blood off of her face onto her shirt, then went out the same way they had entered. She further testified that she got caught on a fence while trying to leave, and ripped her shirt. She came upon a pay telephone and called 911. Police officers arrived and she was brought to the hospital for examination. The victim's torn shirt and photographs of her bruised face were admitted in evidence at trial.

By contrast, [McCray] testified that the couple had consensual intercourse once inside the abandoned building.  He explained that after they were through and he asked the victim if she wanted to go home, she suddenly demanded money from him and, when he refused, grabbed his pants and began to leave.  [McCray] stated that he then tackled the victim to prevent her from leaving and her face struck the floor as they fell.  They then struggled as he attempted to pry his money—which the victim had by then extracted from the pocket of his pants—from her hand and, during the struggle, she bit his arm. According to [McCray], he eventually managed to squeeze the victim's hand open and retrieve his cash, at which point the victim got up and left the building.

[McCray] then went to the home of his friend, James Close, where, according to Close, he pounded on the door, yelling for admittance.  Close testified that [McCray] looked like he was being chased by someone and implied that he wanted to come inside because there was a female outside who was exposing herself to [McCray].  [McCray] testified that he went to Close's house because he wanted to tell him about his encounter with the victim but, suddenly realizing that the abandoned house he had been trespassing in might belong to Close, changed his mind and left.  He explained that he might have referred to the victim as "the girl [who] lifted her shirt up on Central Avenue that time" because he had told Close about his first meeting with the victim and that she had exposed herself on the street that night to some passers-by.

*People v. McCray*, 958 N.Y.S.2d 511, 514-16 (N.Y. App. Div. 2013).

McCray filed a pre-trial discovery demand seeking medical, psychiatric, and related medical records of each prosecution witness on the ground that such information could bear on testimonial capacity, memory, or credibility.  At a court appearance on August 27, 2009, the prosecutor appeared before the court and indicated that she had disclosed to the defense information related to the victim's mental health history.  The prosecutor further stated that there were three prior incidents in which the victim had alleged sexual assault; she had reported only one of those to the police.  Defense counsel asked the trial court to require the People to disclose all of the victim's mental health records.  The trial court ordered the People to obtain the records and to submit the records to the court for in camera review.

On November 4, 2009, the court informed the parties that it had reviewed the psychiatric records and would disclose to the defense those records that would relate to fabricating or

misperceiving events or that showed delusional behavior on the part of the victim. On December 17, 2009, the court released to the defense 28 pages from the thousands of documents submitted for in camera review.

At the conclusion of trial, the jury convicted McCray of first-degree rape as charged. The court subsequently sentenced him as a second felony offender to a determinate imprisonment term of 22 years to be followed by 5 years of post-release supervision.

Through counsel, McCray appealed his conviction, arguing that: 1) the verdict was against the weight of the evidence; 2) the victim's statements that McCray raped her were improperly admitted as bolstering evidence and the lack of accompanying limiting instructions mandated reversal; 3) the trial court erred in refusing to turn over all of the victim's mental health records; 4) the trial court improperly prevented him from establishing that the victim was diagnosed as "hypersexual;" 5) the trial court erred in sustaining objections to questions regarding various acts that the victim had committed; 6) McCray was entitled to medical records of the victim's hospitalization for overdosing six months after the rape; 7) trial counsel was ineffective for failing to challenge the voluntariness of McCray's statements to the police; and 8) his sentence was harsh and excessive. McCray also submitted a *pro se* supplemental brief in which he argued that evidence of his prior uncharged crimes were improperly introduced and admitted. The Appellate Division affirmed the judgment against McCray in a reasoned, divided opinion issued on January 17, 2013. *McCray*, 958 N.Y.S.3d at 528. Two justices dissented, stating their belief upon review of the undisclosed medical records that, "[b]y not disclosing [the complainant's medical] records, County Court deprived [McCray] of the ability to fully prepare his defense, in violation of his 6th

Amendment rights to confront and cross-examine the key adverse witness." *Id.* at 527 (McCarthy, J., dissenting).

McCray sought leave to appeal to the New York Court of Appeals on all issues unsuccessfully raised before the Appellate Division. The Court of Appeals granted McCray leave to appeal on March 5, 2013. In his counseled appeal, McCray argued that: 1) the trial court violated McCray's rights to confrontation and due process by refusing to provide the defense with all of the victim's mental health records that were potentially relevant to her credibility; 2) the trial court failed to review the records of the victim's 2009 hospitalization records and disclose them to the defense; 3) trial counsel was ineffective for failing to object to the bolstering evidence and seek a limiting instruction from the court; 4) the trial court improperly precluded the defense from questioning the victim about a diagnosis that she was hypersexual; and 5) the trial court improperly prohibited McCray from eliciting from the victim and her mother evidence about the victim's erratic and unstable behavior. By *pro se* supplemental brief, McCray re-asserted his Appellate Division claims. On May 1, 2014, the Court of Appeals affirmed the order of the Appellate Division in another divided opinion that also indicates that the Court of Appeals performed its own review of the undisclosed records. *People v. McCray*, 12 N.E.3d 1079, 1083 (N.Y. 2014). Three judges dissented on the ground that the trial court abused its discretion by "[t]he denial of additional medical records providing evidence that could serve as a basis for the jury to disbelieve the complainant's version." *Id.* (Rivera, J., dissenting). McCray moved for reargument in the Court of Appeals, which was denied without comment on September 18, 2014. *People v. McCray*, 18 N.E.3d 947, 947 (N.Y. 2014).

McCray then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 15, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, McCray raises the following claims: 1) he is actually innocent of the crime; 2) he was subjected to an unlawful search and seizure; 3) his statement to police was involuntary and should have been suppressed; 4) the trial court violated his due process rights by refusing to provide the defense with all of the victim's mental health records that were potentially relevant to her credibility; 5) his conviction should be reversed because of various defects in the grand jury proceedings; 6) his speedy trial rights were violated; 7) trial counsel was ineffective in a variety of ways; 8) the trial court violated his right to confrontation by limiting his cross-examination of the victim and her mother; and 9) his sentence was harsh and excessive and vindictively imposed.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary

disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1. *Actual Innocence*

McCray first argues that he is actually innocent of the crime for which he was convicted. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, McCray has fallen short of establishing his actual innocence. In support of this claim, McCray alleges that "the complaining witness falsely accused [him] of sexually assaulting her." But he points to no evidence that exonerates him of the crime, but rather challenges the credibility and value of the evidence against him. Construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Petition therefore argues that the evidence against him is legally insufficient to sustain his convictions. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even

if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Here, McCray attacks the value of the evidence against him, primarily claiming that the evidence against him was unlawfully obtained and the witness lacks credibility. But, as discussed with respect to Grounds 2 and 3, *infra*, the state courts' determination that the evidence was lawfully obtained and thus admissible was both reasonable and fully supported by the record. Likewise, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not

grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, the victim testified that McCray forcibly engaged in sexual intercourse with her. Although she was the sole witness to the crime, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979). Indeed, evidence corroborated other portions of her testimony. The evidence presented at trial was thus sufficient to support McCray's conviction, particularly given the deference required under *Jackson*. Accordingly, McCray is not entitled to relief on this ground in any event.

Ground 2.       *Unlawful Search and Seizure*

McCray next contends that his Fourth Amendment[1] rights were violated by his unlawful arrest and that the evidence obtained pursuant to that arrest, including his statement to law enforcement and his DNA samples, should have been suppressed. But such claim is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or

---

[1]       The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. McCray has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. McCray therefore cannot prevail on his challenge to the legality of his arrest or his claim that the resulting evidence should have been suppressed.

Ground 3.  *Involuntary Statement*

McCray likewise argues that certain of his statements to law enforcement were coerced and thus should have been excluded. The record indicates that, prior to trial, the parties prepared to conduct a hearing on McCray's motion to suppress his statements to law enforcement that he did

not know anyone by the name of the victim and that he did not recognize a photo depicting the abandoned house at 595 Clinton. The hearing was ultimately cancelled with defense counsel's consent, however, because the prosecution indicated that it did not intend to introduce McCray's statements in its direct case, but reserved the right to use them to cross-examine McCray if he testified. Although the prosecutor did not introduce the statements during her case-in-chief, after McCray's direct testimony, she informed the court of her intent to cross-examine McCray about the statements. Defense counsel conceded that they were admissible for that purpose, and the prosecutor questioned McCray about them. McCray did not testify that his statements were involuntarily given; rather, he testified that his statements to police were truthful because he did not know the victim's last name and he had entered the house at night through the back and thus had not seen the front of the house.

As an initial matter, Respondent correctly argues that this claim is unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, McCray argued to the state courts that his statement should be suppressed because it was obtained as a result of an illegal search, which is substantively different from the claim presented in his Petition that the statements were unlawfully coerced. And while he did argue on direct appeal that counsel was ineffective for conceding that the statements could be used on cross-examination, he did not raise that claim to the New York Court of Appeals in his petition for review. Moreover, the Second Circuit Court of Appeals has indicated that an ineffective assistance claim is "distinct" from the claim whose omission suggests such ineffectiveness, and therefore, the underlying claim is not preserved for purposes of *habeas* review. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam). Courts have thus declined to find a claim to be exhausted when it has been presented to the state courts only in the context of an ineffective assistance claim. *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. Oct. 11, 2012) (finding that petitioner's right to self-representation claim would not be fairly presented to state courts if the petitioner were permitted to return to state court to file a *coram nobis* petition for ineffective assistance of appellate counsel based on a failure to raise the self-representation claim on appeal); *Hall v. Phillips*, 04 Civ. 1514,

14

2007 WL 2156656, at *5 (E.D.N.Y. Jul. 25, 2007) ("As courts in this circuit have consistently recognized, an ineffective assistance claim is an insufficient vehicle for exhausting the underlying allegations when those allegations are asserted for the first time as separate claims on habeas.").

Because it appears that this involuntary statement claim is based on the record, it could have been fully raised on direct appeal but was not; consequently, McCray cannot bring a motion to vacate as to this claim. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Accordingly, because he no longer has a venue to raise it in state court, his claim may be deemed exhausted but procedurally defaulted. *Clark,* 510 F.3d at 390; *Grey,* 933 F.2d at 121.

In any event, even if McCray had exhausted this claim, he would not be entitled to relief on it. The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. The safeguards ensured by *Miranda* do not apply at all times, however. Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda*. *United States v. Vigo*, 487

15

F.2d 295, 300 (2d Cir. 1973); *see also United States v. Colon*, 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent). Moreover, a person may validly waive his right to remain silent after receiving and understanding his *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010).

In this case, the record is devoid of any indication that McCray's statements were the product of undue coercion or otherwise involuntarily made. Nor does McCray provide such support in his Petition. Although he argues that his statement was "obtained through total confusion," and appears to allege that law enforcement misled him into making his statements, "'[t]rickery, deceit, even impersonation do not render a confession inadmissible . . . unless government agents make threats or promises.'" *United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004) (quoting *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001)); *see also United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir. 2001) (en banc) (holding that an investigator's misrepresentation that a piece of evidence existed, while reprehensible, does not constitute coercive conduct); *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997) (holding that a confession was voluntary despite the fact that an officer falsely told the defendant that physical evidence connected him to the crime).[2] McCray's involuntary statement claim therefore fails.

Ground 4.        *Non-disclosure of Victim's Mental Health Records*

In Ground 4, McCray argues that his conviction was unlawfully obtained by the failure of the prosecution and trial court to disclose the entirety of the victim's mental health records. After independently reviewing the record and the underlying state court decisions with respect to this

---

[2]        These out-of-circuit cases are cited for persuasive, but not precedential, value.

claim, the Court finds it necessary to consider whether counsel should be appointed for McCray for the sole purpose of advancing this claim.

There is no constitutional right to counsel in federal habeas proceedings. *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)). Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing. *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). However, this Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).[3] In determining whether to appoint counsel, a habeas court should "consider the petitioner's likelihood of success on the merits of his petition, the complexity of legal issues raised by such application and the petitioner's ability to investigate and present his case to the federal habeas court." *Soto v. Walker*, No. 9:00-CV-0197 (TJM/DEP), 2005 WL 2260340, at *4 (N.D.N.Y. Sept. 15, 2005); *see Hodge v. Police Officers*, 802 F.2d 58, 60-61 (2d Cir. 1986). When a petitioner's claims may "fairly be heard on written submissions," a habeas petitioner's request for counsel should ordinarily be denied. *Reynolds v. Greene*, No. 9:05-CV-1539 (DNH),

---

[3] These provisions additionally provide that counsel may be appointed only for a petitioner who "is or becomes financially unable to afford counsel." 28 U.S.C. § 2254(h); *see also* 18 U.S.C. § 3006A(a)(2)(B) ("representation may be provided for any financially eligible person"). The record here indicates that, although McCray paid the $5.00 filing fee to submit his Petition in this Court, he additionally submitted an application to proceed in forma pauperis ("IFP"), which included his Inmate Account Statements. Docket No. 8. This Court, through a previously-assigned Magistrate Judge, granted his IFP application, concluding that McCray could afford to pay the filing fee but was eligible for IFP status "for all other purposes." Docket No. 9. McCray is therefore financially eligible for court-appointed representation under 28 U.S.C. § 2254(h) and 18 U.S.C. § 3006A(a)(2)(B).

2010 WL 604179, at *2 (N.D.N.Y. Feb. 16, 2010) (quoting *Brito v. Burge*, No. 1:04-CV-0432, 2005

WL 1837954, at *1 (S.D.N.Y. Aug. 3, 2005)).

Here, both New York appellate state courts issued divided opinions. On appeal before the

Appellate Division, two justices of the five-justice panel concluded that McCray:

> is entitled to a reversal of his judgment of conviction because his 6th Amendment rights to confront and cross-examine adverse witnesses were violated by County Court's failure to turn over to [him] certain critical mental health records pertaining to the victim. [McCray] was entitled to the undisclosed records pursuant to controlling Court of Appeals precedent. The undisclosed records all raise issues that would affect the victim's credibility or her ability to recall events, and some of the undisclosed records would be extremely damaging to the People's case.

*McCray*, 958 N.Y.S.2d at 523 (McCarthy, J., dissenting).

Likewise, after the Court of Appeals granted review, three judges of a seven-judge panel

dissented from the affirmance of McCray's conviction:

> Here, credibility issues were central to the case, and there was evidence supporting [McCray's] version of events, thus requiring the jury to decide between divergent stories. There is a "reasonable possibility" that failure to disclose documents from the complainant's mental health medical records, which reveal her history of memory loss, potential fabrications, substance abuse, distortions in her view of interpersonal relationships, and information suggesting unsubstantiated claims of prior rape and sexual abuse, contributed to the verdict. Therefore, the trial court abused its discretion in denying disclosure.
> In addition, to the extent the majority suggests that [McCray's] challenge to the medical records in this case is limited to a *Brady*[4] violation, I disagree with this narrow interpretation of [McCray's] constitutional rights. Denial of documents that would have assisted the defense in preparing for cross-examination of the complainant, including questioning for impeachment purposes, implicates [McCray's] confrontation rights.

*McCray*, 12 N.E.32d at 1083 (citation omitted).

For the reasons persuasively explained by the dissenting opinions of the state appellate

courts, the Court finds that McCray has established a colorable claim for relief with respect to the

---

[4]     *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

non-disclosure of certain of the complainant's mental health records. The Court additionally finds that McCray's claim is sufficiently complex that the "appointment of counsel would be more likely to lead to a just determination." *Brito*, 2005 WL 1837954, at *2 (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)). Accordingly, the Court determines that it necessary to appoint counsel to file supplemental briefing in support of this claim, as outlined below.

Ground 5. <u>*Grand Jury Defects*</u> (Arguments 2, 3, and 4(b) of Attachment (1))

In addition to the Grounds explicitly enumerated in his Petition, McCray advances a number of other arguments in a filing entitled "Attachment (1)" and filed in support of the Petition. In that filing, he makes a number of arguments alleging a variety of defects in the underlying grand jury proceedings. However, McCray's subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

McCray is therefore not entitled to relief on any argument that the grand jury proceedings were defective.

Ground 6.     _Violation of Speedy Trial Rights_ (Argument 4(a) of Attachment (1))

McCray also contends that his statutory right to a speedy trial was violated because the prosecution was not ready for trial within six months of the commencement of the criminal action, as required by New York Criminal Procedure Law ("CPL") § 30.30.  Again, however, because McCray raises his speedy trial claim for the first time in this Petition, the claim is likewise unexhausted and procedurally defaulted.  *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

Moreover, to the extent that McCray raises speedy trial violations based on New York criminal procedural law, a state statutory protection, his claim is not cognizable on federal habeas review.  *See, e.g., Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *9 (E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at *4 (E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent*, *Collins Corr. Facility*, 549 F. Supp. 2d 226, 236-37 (N.D.N.Y. 2008).  Accordingly, any CPL § 30.30 speedy trial claim is not a basis for relief in this Court.

Further, to the extent that McCray's *pro se* Petition could be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), to additionally assert a federal speedy trial claim, he is not entitled to relief on that basis either.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. CONST. amend VI.  This right is enforced against the states through the Due Process Clause of the Fourteenth Amendment.  *Klopfer v. N. Carolina*, 386 U.S. 213, 222-23 (1967).  The right to a speedy trial functions "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of

the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). As the Supreme Court made clear in *Barker*:

> [T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Id.* at 521; *see also Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (the right to a speedy trial is "amorphous," "slippery," and "necessarily relative"); *United States v. Ghailani*, 733 F.3d 29, 41 (2d Cir. 2013).

The Supreme Court has established a multi-factor balancing test to aid courts in assessing whether a speedy trial violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The list is not exhaustive, and no single factor is dispositive. *Id.* Accordingly, "reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation of the Speedy Trial Clause." *United States v. Ray*, 578 F.3d 184, 191 (2d Cir. 2009); *see also Barker*, 407 U.S. at 521 ("It is, for example, impossible to determine with precision when the right has been denied.").

Here, McCray's trial began roughly 7 months after his initial arrest. McCray thus fails to show that the delay is "presumptively prejudicial." *See United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (suggesting that there is a general consensus that a delay of eight months is presumptively prejudicial); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (a delay that "approaches one year" is presumptively prejudicial).

McCray's claim also fails in light of the application of the four *Barker* factors.  First, with respect to the length of the delay, a seven-month delay is shorter than the delays in other cases in which the Second Circuit has found no Sixth Amendment violation.  *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six month delay did not violate right to speedy trial); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980).  Moreover, McCray did not assert his right to a speedy trial before the trial court and has not claimed that the delay in the commencement of his trial caused him to suffer any prejudice or prevented him from presenting a full defense.  Accordingly, McCray cannot prevail on any speedy trial claim.

Ground 7.    *Ineffective Assistance of Trial Counsel* (Argument 5 of Attachment (1))

McCray also alleges that his trial counsel rendered ineffective assistance in a variety of ways.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, McCray must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient

showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need n ot demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful

representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

McCray's ineffective assistance claim must fail, however, even under the more favorable New York standard. McCray first argues that counsel was ineffective for commenting to the jury during voir dire that the case did not involve McCray's innocence. But a fair reading of the record indicates that McCray's argument misconstrues counsel's statement, which was intended to explain the prosecution's burden of proof. Contrary to McCray's assertion, counsel's statement informed the jury that it did not need to believe that McCray was innocent to find him not guilty; rather, McCray was entitled to a not-guilty verdict unless the jury believed he was in fact guilty and they could therefore find him not guilty even if they were unsure that he was innocent.

McCray also contends that counsel was ineffective because he failed to investigate the facts of the case. In support of his claim, however, McCray fails to identify the evidence that counsel overlooked and how that shortcoming impacted his case. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review). McCray offer only conclusory, self-serving statements, which are insufficient to support an ineffective assistance of counsel claim. *See*

*Larweth v. Conway*, 493 F. Supp. 2d 662, 670-71 (W.D.N.Y. 2007); *Skeete v. New York*, No. 1:03–CV–2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003).

McCray also claims that counsel failed to investigate a police report related to sexual assault allegations that the victim made against another individual. McCray includes a copy of the police report as an exhibit to his Petition, and states in an attachment to the Petition that the report was not part of the mental health records disclosed after the trial court's in camera review. McCray fails to demonstrate that counsel did not investigate the report, particularly given that it appears that counsel affirmatively obtained it. Moreover, although McCray alleges that the sexual assault allegations were false, there is nothing in the record showing such falsity. While the report indicates that the victim chose not to submit to an interview regarding her allegations and the investigation was closed, the report does not establish the falsity of the allegations, and thus McCray fails to show that counsel's further investigation of the police report would have led to a different outcome.

McCray next alleges that counsel was ineffective for failing to question the victim as to whether she had ever filed a complaint that someone had sexually assaulted her and whether she was aware that McCray had been offered a plea deal. But neither question would have been permissible. The first question refers to evidence inadmissible under New York's Rape Shield Law, *see McCray*, 958 N.Y.S.2d at 520, and, under New York law, "[t]he People's offer during plea bargaining was nothing more than an offer to compromise which is not admissible as evidence," *People v. Deacon*, 572 N.Y.S.2d 843, 844 (N.Y. Ct. Cl. 1991). McCray thus fails to show that counsel was ineffective for not asking such questions or that he was prejudiced by the omissions. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

McCray further contends that counsel was ineffective for failing to object and seek a limiting instruction when the prosecution offered bolstering testimony from Detective Heid, who testified that the victim had identified McCray as her attacker from a photographic array. The record shows that, at the close of direct examination of Detective Heid, defense counsel moved to dismiss the indictment based on improper testimony of the photo identification procedure. The court criticized the timing of the objection because it had not been made when the question was asked and answered, and defense counsel explained that he did not wish to draw attention to the exchange. The court agreed that the question was "absolutely objectionable as bolstering,"[5] but refused to dismiss the indictment on that ground. The court stated that "if an objection had been made on the basis of bolstering, I would have granted it and at this point I'm striking the testimony with regard to the identification." Defense counsel agreed to the proposed cure, and the instruction was given as promised. Therefore, contrary to McCray's argument, the record does not show that the trial court would have dismissed the indictment against him if counsel had made a timely objection. It further indicates that McCray received the remedy he would have gotten had counsel objected when the question was asked. He thus cannot show that he was prejudiced by the timing of counsel's objection, and he is not entitled to relief on any argument advanced in support of his ineffective assistance claim.

---

[5] *See People v. Trowbridge*, 113 N.E.2d 841 (N.Y. 1983) (barring third parties from testifying about a witness's out-of-court identifications in New York courts); *see also Martin v. Gavin*, No. 92 Civ. 3970, 1993 WL 138813, at *3 (S.D.N.Y. Apr. 23, 1993) (concluding that officer's testimony that the defendant was arrested as a result of the witness' identification of him as the perpetrator constituted "improper, inferential bolstering of the identification testimony under New York law" but that counsel's failure to object to it was not ineffective assistance because the admission of the bolstering testimony was harmless error).

Ground 8.    _Limitations on Cross-Examination_ (Arguments 8 and 9 of Attachment (1))

McCray next claims that the trial court violated his right to confrontation by precluding him from asking the victim about her hypersexuality and by limiting cross-examination of the victim's mother regarding various events at which the victim exhibited undisciplined behavior. On direct appeal of his conviction, the Appellate Division considered and rejected these arguments as follows:

> [McCray] also argues that County Court committed reversible error by precluding him from examining the victim about her hypersexuality. When defense counsel asked the victim on cross-examination if, at some point in time, she had been diagnosed as hypersexual, the court sustained the People's objection as to form and directed counsel to rephrase the question. Counsel was unable to do so in a way to avoid objection and moved on. "Evidence of a victim's sexual conduct shall not be admissible in a prosecution for [a sex] offense" unless it meets one of the enumerated statutory exceptions (CPL 60.42). Here, the victim's mental health records indicate that she exhibits hypersexual behavior in that she is inappropriately focused on sex in conversation with others, and that such behavior is a symptom of her bipolar disorder. [McCray] did not introduce medical evidence or expert testimony to establish that hypersexuality is a mental illness that would impact the victim's credibility or control her behavior; indeed, all references to the victim's "hypersexuality" in her medical history are to her wholly voluntary inappropriate, promiscuous behavior—conduct intentionally designed to shock and draw attention—which is precisely the kind of evidence the Rape Shield Law prohibits. Under these circumstances, we discern no abuse of discretion in the court's limitation on the scope of cross-examination of the victim.
>
> In any event, [McCray] was permitted to introduce evidence of the victim's hypersexuality on the record through the testimony of the victim's mother, [McCray] and Calhoun.[FN5] Accordingly, the jury had this information when assessing the evidence against [McCray]. We also hold that County Court's refusal to permit [McCray] to cross-examine the victim's mother regarding various events at which the victim exhibited undisciplined behavior, while permitting questions regarding the victim hearing voices, wandering around outside in her pajamas, sensing dead people and visualizing her deceased grandfather, demonstrated a sound exercise of discretion in controlling the scope of cross-examination.
>
> > FN5.    Calhoun was even permitted to provide a layperson's definition, explaining that hypersexual means "she [is] very hot in the pants."

_McCray_, 958 N.Y.S.2d at 520-21 (citations omitted).

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. _See Washington v. Texas_, 388 U.S. 14, 19

(1967). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The Second Circuit has further mandated:

> "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (per curiam) (emphasis omitted). A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)]; *see also Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (the "decision to restrict cross-examination will be reversed only when the court has abused its broad discretion" (internal quotation marks omitted)). "To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." *Watson*, 640 F.3d at 510.

*Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1287 (2013); *see also Grant v. Demskie*, No. 99-2744, 2000 WL 1715224, at *4 (2d Cir. Nov. 13, 2000) (holding on habeas review that state trial court did not abuse its discretion in precluding admission of allegedly false allegations regarding prior sexual incidents where defense presented "little evidence" that the allegations were indeed false).

"Limitations on cross-examinations raised in habeas petitions have been found to have not violated the Confrontation Clause . . . where cross-examination would have probed matters deemed collateral." *Soto v. Donelli*, No. 06-CV-5816, 2010 WL 4242602, at *5 (S.D.N.Y. Apr. 8, 2010) (citation omitted). "Collateral matters are those that bear solely on the witness' credibility." *Avincola v. Stinson*, 60 F. Supp. 2d 133, 156 (S.D.N.Y. 1999) (collecting cases). Further, there is

no Confrontation Clause violation "if [the] defendant has ample opportunity to conduct effective cross examination." *Soto*, 2010 WL 4242602, at *6 (citations and internal quotation marks omitted).

Under these guidelines, the Court cannot find unreasonable the state court's rejection of McCray's arguments. With respect to his claim that the trial court violated his rights to confrontation and to present a defense by precluding him from questioning the victim about her hypersexuality, as the Appellate Division recognized, the substance of his claim is that the trial court made an erroneous ruling under New York Criminal Procedure Law ("CPL") § 60.42, New York's Rape Shield Law. That law provides that evidence of a victim's past sexual encounters is generally inadmissible at a sexual abuse trial, unless certain exceptions are met.[6] Such a claim—which is a matter of state evidentiary law—is insulated from review by this Court. *See Estelle*, 502 U.S. at

---

[6]     That section provides:

> Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:
>> 1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
>> 2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law within three years prior to the sex offense which is the subject of the prosecution; or
>> 3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
>> 4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
>> 5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. Crim. Proc. Law § 60.42.

67-68. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68. Thus, it is outside the purview of this Court to determine whether the trial court misinterpreted or misapplied New York's Rape Shield Law when it precluded McCray from cross-examining the victim as to her diagnosed hypersexuality, and such a claim does not present a federal question for which habeas relief is available. *See id.*; *Rasmussen v. Filion*, No. 01-CV-6215P, 2005 WL 318816, at *10 (W.D.N.Y. Feb. 9, 2005) (recognizing that the state court's interpretation of New York's Rape Shield Law is beyond the purview of federal district court's habeas review).

Moreover, the Second Circuit has held that the restrictions imposed by New York's Rape Shield Law are not *per se* unconstitutional nor unconstitutional as applied to a defendant who was precluded from cross-examining a victim about her prior sexual history. *See Agard v. Portuondo*, 117 F.3d 696, 705 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000). Indeed, Federal Rule of Evidence 412 significantly proscribes in federal court evidence of the victim's sexual conduct where the defendant is accused of a sexual offense. *See* FED. R. EVID. 412(a),(b). This Court therefore is limited to the question of whether the trial court's ruling deprived McCray of a fundamentally fair trial. *See Washington v. Scriver*, 255 F.3d 45, 56 (2d Cir. 2001) ("state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness").

Because, as the Appellate Division additionally acknowledged, the trial court did allow McCray to elicit testimony about the victim's hypersexuality through the victim's mother, Calhoun, and McCray, the Court does not find that the ruling deprived McCray of a fundamentally fair trial.

McCray fares no better with respect to his claim that the trial court erred in sustaining objections lodged during cross-examination of the victim's mother. The record fully supports the Appellate Division's determination that "County Court's refusal to permit [McCray] to cross-examine the victim's mother regarding various events at which the victim exhibited undisciplined behavior, while permitting questions regarding the victim hearing voices, wandering around outside in her pajamas, sensing dead people and visualizing her deceased grandfather, demonstrated a sound exercise of discretion in controlling the scope of cross-examination." *McCray*, 958 N.Y.S.2d at 520-21. That conclusion is both reasonable and fully consistent with federal law, as outlined above. McCray is therefore not entitled to relief on these confrontation claims.

Ground 9.    *Harsh and Excessive/Vindictive Sentence* (Argument 10 of Attachment (1))

Finally, McCray challenges his sentence as harsh and excessive and "vindictive or corruptive in nature by [a] biased trial judge." It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, McCray's 22-year determinate imprisonment term is within the

statutory range of 8 to 25 years for a second felony offender who stands convicted of a class B violent felony. *See* N.Y. PENAL LAW § 70.06(6)(a). Because McCray's sentence fell within the state's statutory guidelines, a harsh and excessive sentence claim is not cognizable on federal habeas review.

To the extent that McCray's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment).

Nor does McCray demonstrate that he was subjected to vindictive sentencing. The Supreme Court has determined that due process is violated when a penalty is imposed upon a person for electing to exercise a constitutionally protected right, including the right to have a jury trial in a criminal case. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "However, the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citation omitted); *see also Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *9-10 (S.D.N.Y. Apr. 16, 2003) (rejecting petitioner's argument that the disparity between the prosecution's pretrial plea offer of 5-10 years and his subsequent sentence of 25-50 years suggested vindictiveness). Here, while McCray ultimately received a 22-year sentence that is much longer than the time served plea offer he rejected,[7] there is no evidence in the record to suggest that vindictiveness or any other improper criterion influenced the trial court when imposing McCray's sentence. McCray thus cannot prevail on his sentencing claim in any event.

## V. CONCLUSION

The Court concludes that McCray has raised a colorable claim for relief with respect to his contention that the trial court erroneously and prejudicially failed to disclose portions of the

---

[7]     The record is also clear that, when rejecting the prosecution's offer to plead guilty to an A misdemeanor with a sentence of time served and a requirement to register as a sex offender, McCray affirmatively acknowledged that he faced a much more substantial sentence if convicted of the rape charge. There is no indication in the record that his rejection of the plea was involuntary or unknowing, and McCray does not allege as such in his Petition. Indeed, the record suggests that McCray was unwilling to agree to any plea deal that required sex offender registration, and the prosecution was unwilling to make an offer that omitted such requirement and withdrew a previous offer when it learned that the registration requirement could not attach to the misdemeanor conviction that was the basis of the earlier proposed deal.

victim's mental health records that bore on her credibility (Ground 4 and Arguments 6, 6a, and 7 in Attachment (1)). The Court has additionally determined that further briefing on that issue is necessary for a just determination and that the interests of justice require the appointment of counsel for McCray solely with respect to submitting additional briefing on that issue. McCray is not entitled to relief, however, on the remainder of his claims.

IT IS THEREFORE ORDERED THAT, pursuant to 18 U.S.C. § 3006A(a)(2)(B), the Criminal Justice Act (CJA) Panel is requested to appoint an attorney for McCray for the purpose of submitting further briefing with respect to McCray's claim that the trial court erroneously and prejudicially failed to disclose portions of the victim's mental health records that bore on her credibility (Ground 4 and Arguments 6, 6a, and 7 in Attachment (1)).

IT IS FURTHER ORDERED THAT counsel for petitioner shall have 90 days from the date of appointment to file supplemental briefing in support of that ground, Respondent shall have 30 days from the date petitioner's supplemental briefing is submitted to respond, and petitioner's counsel shall have 14 days in which to reply.

IT IS FURTHER ORDERED THAT, once this Court has received and considered the supplemental briefing on the remaining claim, the Court will determine whether further action is necessary or enter final judgment. If further action is deemed necessary, the Court will determine whether the appointment of counsel shall continue. Until final judgment on all grounds raised in the Petition is entered, this decision will be subject to revision in conformity with Federal Rule of Civil Procedure 54(b).

IT IS FURTHER ORDERED THAT the Court will reserve until final judgment its determination of whether to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v.*

*Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

Dated: August 31, 2017.

       /s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge